IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

NATIONAL OILWELL VARCO, L.P.,      )
a Delaware limited partnership,          )
                                                            )
                    Plaintiff,                          )
                                                            )
v.                                                          )        Case No. CIV-24-1258-D
                                                            )
BLACK DIAMOND OILFIELD             )
RENTALS, LLC; and BASIN              )
HOLDINGS, LLC,                            )
                                                            )
                    Defendants.                      )

## ORDER

Before the Court is Plaintiff National Oilwell Varco, L.P.'s (NOV) Motion for Preliminary Injunction and Brief in Support [Doc. No. 26]. Defendant Black Diamond Oilfield Rentals, LLC (Black Diamond) filed a Response [Doc. No. 34], and NOV filed a Reply [Doc. No. 35]. Thereafter, the Court permitted Black Diamond to file a Sur-Reply [Doc. No. 44]. The matter is fully briefed and at issue.

## FACTUAL BACKGROUND

NOV manufactures oil and gas drill pipe and drill pipe connections under its eXtreme Torque ("XT") trademark. Grant Prideco designed XT drill pipe and connections with a "double shoulder" to eliminate a gap common in single-shoulder connections. Following a merger, NOV acquired Grant Prideco's XT patent and trademark. NOV's patent for the XT drill pipe and drill pipe connections expired in 2017.

Following the expiration of the XT patent, Black Diamond began offering its own double-shoulder connections, named EVRDRL. Black Diamond referred to its EVRDRL

connections as "XT-type," allegedly because the oil and gas industry had come to associate "XT" with a type of drill pipe, and not specifically with NOV's XT connections. Black Diamond alleges that it procured independent studies and certifications that found EVRDRL connections to be interchangeable and/or compatible with NOV's XT connections. NOV disputes any claim of interchangeability between its XT connections and Black Diamond's EVRDRL connections. NOV further disputes that XT has become a generic term; rather, NOV asserts that XT is well-known in the oil and gas industry to refer exclusively to NOV's drill pipe and drill pipe connections.

NOV first became aware of EVRDRL sometime in 2018. In July of 2020, NOV directed Black Diamond to "provide clear notice and attribution on its webpage of ownership by [Grant Prideco/NOV] with respect to the [XT mark]." [Doc. No. 26-10, at 3]. As further discussed herein, in 2021 and 2022, NOV became aware of certain instances of customers being confused as to whether drill pipe and connections supplied by Black Diamond were true NOV XT connections, or Black Diamond's EVRDRL connections described as "XT-type." In September of 2021, NOV instructed Black Diamond to "remove all references to XT™ from [Black Diamond's] performance sheets," which Black Diamond's Chris Biggerstaff agreed to do [Doc. No. 27-2, at 3]. However, internal NOV e-mails from November of 2022 reflect NOV's understanding that Black Diamond was "bootlegging" EVRDRL connections as XT connections under the description "XT-type." [Doc. No. 27-6, at 8].

In January of 2023, both NOV and Black Diamond were named as defendants in *Snider v. Cactus Drilling Co., LLC, et al.*, Case No. CJ-2023-7 (District Court of Grady

County, Oklahoma) (Snider Litigation). The Snider Litigation alleged that Tanner Snider lost his life on a drilling rig "when a drill pipe connection failed downhole during trip out operations." [Petition, at ¶ 1, Snider Litigation, CJ-2023-7 (Grady County District Court)].[1] The petition references "more than 600 joints of NOV 4" XT-39 14 ppf drill pipe," which was allegedly manufactured by NOV and provided by Black Diamond. *Id.* at ¶¶ 2, 16. On February 27, 2024, the Snider Litigation plaintiffs dismissed without prejudice their claims against NOV, and the Snider Litigation ultimately resolved by settlement in October of 2024.[2] Black Diamond represents that no determination of fault or cause was made in the Snider Litigation [Doc. No. 34, at 3].

On December 3, 2024, NOV filed this action, asserting the following claims against Black Diamond: trademark infringement (15 U.S.C. § 1114); unfair competition and false designation of origin (15 U.S.C. § 1125(a)); false advertising (15 U.S.C. § 1125(a)); common-law trademark infringement; violations of the Oklahoma Deceptive Trade Practices Act (Okla. Stat. tit. 78, §§ 51 *et seq*.); and unjust enrichment. On March 12, 2025, NOV amended its complaint to add Black Diamond's owner, Basin Holdings, LLC, to its unjust enrichment claim.

NOV now seeks a preliminary injunction, enjoining Black Diamond and its agents from: using the XT mark or any mark that is confusingly similar to the XT mark; otherwise

---

[1] The Court takes judicial notice of the Snider Litigation, which is publicly accessible via http://www.oscn.net.

[2] Snider Litigation OSCN Docket Sheet, https://www.oscn.net/dockets/GetCaseInformation.aspx?db=grady&number=CJ-2023-7, accessed April 2, 2025.

infringing on the XT mark; falsely representing that Black Diamond's goods and services are licensed by or in any other way associated with NOV; passing off their products or services as those of NOV or NOV-authorized licensees; and unfairly competing with NOV or NOV-authorized licensees. NOV further requests that Black Diamond be ordered to identify all customers who have purchased products under the XT mark within the last 8 years; and disseminate corrective notices as to Black Diamond's purported infringement, unfair competition, and false advertising.

## STANDARD OF DECISION

"The purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their issuance." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1267 (10th Cir. 2005). A preliminary injunction is an "extraordinary remedy" and any right to relief must therefore be "clear and unequivocal." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1261 (10th Cir. 2004) (quotation marks and citation omitted). "Because it constitutes drastic relief to be provided with caution, a preliminary injunction should be granted only in cases where the necessity for it is clearly established." *U.S. ex rel. Citizen Band Potawatomi Indian Tribe of Okla. v. Enter. Mgmt. Consultants, Inc.*, 883 F.2d 886, 888–89 (10th Cir. 1989).

To obtain a preliminary injunction, the movant bears the burden of establishing four factors: "(1) a likelihood of success on the merits; (2) a likelihood that the moving party will suffer irreparable harm if the injunction is not granted; (3) the balance of equities is in the moving party's favor; and (4) the preliminary injunction is in the public interest." *Republican Party of New Mexico v. King*, 741 F.3d 1089, 1092 (10th Cir. 2013). Of these

four factors, the "showing of probable irreparable harm is the single most important prerequisite." *Dominion Video*, 356 F.3d at 1260 (quotation marks and citation omitted). Accordingly, "the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Id.* Thus, a district court may deny injunctive relief if the moving party fails to make a showing of irreparable harm. *See New Mexico Dep't of Game and Fish v. U.S. Dep't of the Interior*, 854 F.3d 1236, 1255 (10th Cir. 2017) (explaining that a party's failure to show irreparable harm renders it unnecessary for a district court to address the remaining preliminary injunction factors).

Typically, an evidentiary hearing is held before resolving a motion for a preliminary injunction. If, however, the facts are not in dispute, a ruling can be made based on the parties' written submissions. *See Carbajal v. Warner*, 561 F. App'x 759, 764 (10th Cir. 2014) (unpublished).[3] This is particularly true in cases where neither party requests an evidentiary hearing. *Robinson v. City of Edmond*, 160 F.3d 1275, 1286 (10th Cir. 1998) (noting that "a district court does not abuse its discretion in deciding not to hold an evidentiary hearing when no such request is ever made.").

## DISCUSSION

### I.    Irreparable Harm

Establishing irreparable harm is "not an easy burden to fulfill." *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003). "To constitute irreparable harm,

---

[3] Unpublished opinions are cited pursuant to FED. R. APP. P. 32.1(a) and 10th Cir. R. 32.1(A).

an injury must be certain, great, actual 'and not theoretical.'" *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (citation omitted). Thus, irreparable harm is not "merely serious or substantial" but instead must be "of such *imminence* that there is a clear and present need for equitable relief." *Id.* (internal quotation omitted) (emphasis in original). Further, "purely speculative harm" or harm that can be "compensated after the fact by monetary damages" is not irreparable. *Greater Yellowstone Coal.*, 321 F.3d at 1258. Under this standard, the moving party has the burden to establish that "*during the time it will take to litigate this case in district court*," if no injunction is issued, it "will have an irreparable effect in the sense of making it difficult or impossible to … restore the status quo ante in the event [it] prevail[s]." *Heideman*, 348 F.3d at 1189 (emphasis added).

NOV first contends that, because it can show a likelihood of success on the merits, it is entitled to a rebuttable presumption of irreparable harm on its Lanham Act claims. In response, Black Diamond contends that NOV cannot show irreparable harm due to NOV's delay in seeking injunctive relief.

Delay is one factor in the irreparable harm analysis, and a party's delay in seeking preliminary relief cuts against a finding of irreparable harm. *See RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1211 (10th Cir. 2009). "[T]here is no categorical rule that delay bars the issuance of an injunction[.]" *Fish v. Kobach*, 840 F.3d 710, 753 (10th Cir. 2016). Rather, the question is "whether the delay was reasonable, was not a decision by the party to 'sit on its rights,' and did not prejudice the opposing party." *Fish*, 840 F.3d at 753. "Any unnecessary delay in seeking relief may be viewed as inconsistent with a claim that plaintiff is suffering great injury or, in the case of preliminary injunctive relief, that there is an

6

urgent need for immediate relief and that a judgment would be rendered ineffective unless some restraint is imposed on defendant pending an adjudication on the merits." *Utah Gospel Mission v. Salt Lake City Corp.*, 316 F.Supp.2d 1201, 1221 (D. Utah 2004) (internal quotations and citation omitted).

The Court relies on the following pertinent events in assessing NOV's delay:

| Date: | Event: |
|---|---|
| 2008 | NOV acquired Grant Prideco, to include Grant Prideco's patent and trademark for XT drill pipe and connections [Doc. No. 27, Laurent Decl., ¶¶ 16, 21]. |
| 2017 | NOV's patent covering XT drill pipe and connections expired [Doc. No. 27, Laurent Decl., ¶ 24]. |
| 2018 | Black Diamond began to offer its own double-shoulder connections named EVRDRL; Black Diamond referred to its double-shoulder connections as XT-type [Doc. No. 34-1, Biggerstaff Decl., ¶¶ 7-8]. |
| 2018 | NOV was made aware of EVRDRL "sometime in 2018," according to the deposition of Ludivine Laurent [Doc. No. 34-2, Laurent Dep., 82:2-7].[4] Laurent further testified that "at some time in 2018 … we started hearing of certifications that were produced by external companies stating that EVRDRL was interchangeable with XT, the first one being XT39." *Id.* at 82:13-17. |
| 7/30/2020 | NOV sends letter to Black Diamond regarding Black Diamond's use of "XT" on its website, noting that Black Diamond's use of the term "is likely to cause confusion, or to cause mistake, and/or to deceive consumers as to the affiliation of [Black Diamond's] business with NOV or [Grant Prideco], or as to origin, sponsorship, or approval of [Black Diamond's] goods or commercial activities by NOV or [Grant Prideco]. … NOV is only asking at this time that [Black Diamond] provide clear notice and attribution on its |

---

[4] Ludivine Laurent is a Senior Vice President at XL Systems, which is a business unit of NOV [Doc. No. 27, Laurent Decl., ¶ 2].

| | |
|---|---|
| | website of ownership by [Grant Prideco] with respect to the [XT mark]….” [Doc. No. 27-3, at 3]. |
| August 2020 | NOV issues statement on XT and other trademarks, warning that “‘bootleg’ versions or copies of [Grant Prideco's] connection technology is [sic] not authorized by [Grant Prideco] to be sold and cannot be represented as [Grant Prideco's] trademarked connections,” and that “[a]ny party representing ‘bootleg’ or copied connection[s] as genuine [Grant Prideco] connections is potentially exposing itself to legal action.” [Doc. No. 27-4]. |
| 8/18/2021 | Emails between NOV and customer, wherein the customer tells NOV that “our string was sent to Black Diamond under a false understanding that they were certified to repair the XT57 thread…” [Doc. No. 27-7, at 3]. |
| 9/15/2021 | NOV requests that Black Diamond “remove all references to XT™ from [Black Diamond's] performance sheets,” adding that if Black Diamond “insist[s] on using our marks they must be used correctly and attributed to Grant Prideco. We do not want our name or mark used in claims of interchangeability.” [Doc. No. 27-2, at 3]. |
| 9/15/2021 | Internal NOV email: “It looks as we [sic] need to take some action against Black Diamond. They appear to be branding their own product using the name of XT™. This is their datasheet for the product they claim they built.” [Doc. No. 26-16, at 5]. |
| 9/16/2021 | Black Diamond responds to NOV's e-mail, and Chris Biggerstaff of Black Diamond says “thanks for bringing this to my attention. We'll get this fixed ASAP.” [Doc. No. 27-2, at 2]. |
| 11/10/2022 | Internal NOV emails, which include: “EVRDRL is the bootlegged [sic] of our … XT™ connections by Black Diamond. They have also used Fearnley Procter to obtain a certification of design and ‘compatibility’ with our connections.” [Doc. No. 27-6, at 8]. The email also provides that “rather than selling their bootlegged connection as EVRDRL, they call it XT™ type. That shall not be.” [Doc. No. 27-6, at 8]. |
| 11/14/2022 | Internal NOV emails referencing a customer who thought the EVRDRL connection was actually a NOV connection [Doc. No. 27-6, at 6-7] (“They |

| | |
|---|---|
| | were lured because they confused XT™ [54 style][5] for XT™ 54. I would think that this is the intent on [Black Diamond's licensee]. They are deceiving our customers. They should have called this connection EVRDRL 5.40 instead."). |
| 11/14/2022 | Internal NOV emails, including "our comments very nicely support a trademark infringement argument. … Another party cannot use the same trademark as ours on the same or similar goods or use a similar trademark on the same goods because to do so confuses a customer into thinking it is buying a NOV good, when it is not. This is the problem here." [Doc. No. 27-6, at 5]. |
| 1/6/2023 | Black Diamond and NOV are named as defendants in the Snider Litigation, Case No. CJ-2023-7 (District Court of Grady County, Oklahoma) [Doc. No. 34-1, Biggerstaff Decl., ¶ 12]. |
| 8/4/2023 | Black Diamond's Responses to NOV's interrogatories in the Snider Litigation. NOV relies upon these responses to show that "Black Diamond admits to using XT-type," and that Black Diamond may have cut/re-cut the drill pipe at issue in the Snider Litigation to an EVRDRL 3.90 connection. [Doc. No. 26, at 9; Doc. No. 26-6]. |
| 2/27/2024 | NOV is dismissed without prejudice from the Snider Litigation |
| 7/23/2024 | Former Black Diamond salesman Jeb Hunt is deposed in the Snider Litigation. NOV relies upon Mr. Hunt's testimony that Mr. Biggerstaff of Black Diamond instructed salesmen to sell EVRDRL 3.90 as XT39 [Doc. No. 26-4]. |
| 12/3/2024 | NOV files the present lawsuit |
| 2/26/2025 | NOV files its motion for preliminary injunction |

---

[5] There are display issues with this portion of the e-mail. The Court is fairly confident that the original e-mail reads as quoted. Even if there are slight differences, the Court understands this e-mail to reflect NOV's understanding that customers were confusing Black Diamond's XT-type with NOV's XT connection, in November of 2022.

Upon careful consideration of the foregoing timeline and the parties' submissions, the Court finds that NOV has not sufficiently shown that it will suffer irreparable harm unless a preliminary injunction is granted.

At the risk of repeating the contents of the timeline, NOV first became aware of Black Diamond's EVRDRL in 2018; sent a letter to Black Diamond in mid-2020 regarding Black Diamond's use of the XT mark on its website; issued a statement in August of 2020 warning against "bootlegged" XT products; received e-mails in 2021 and 2022 from customers who were allegedly confused as to Black Diamond's certifications to repair NOV pipe and by Black Diamond's use of XT-type connections; told Black Diamond to remove XT from its "performance sheets" in September of 2021; sent various internal e-mails in 2021 and 2022 discussing NOV's knowledge of Black Diamond's apparently infringing activities; was named (along with Black Diamond) as a defendant in the Snider Litigation in January of 2023; and was dismissed from the Snider Litigation, without prejudice, in February of 2024.

Under these circumstances, the Court is not persuaded by NOV's assertion that it did not become aware of Black Diamond's activities supporting its request for injunctive relief until Mr. Hunt was deposed in July of 2024.[6] Rather, the Court finds that NOV had sufficient knowledge of Black Diamond's activities which underlie NOV's request for injunctive relief by November of 2022, at the latest.[7] Further being named in the Snider

---

[6] Even if the Court were to adopt NOV's timeline, NOV has made no attempt to explain why it waited an additional 218 days from Mr. Hunt's July 2024 deposition to move for injunctive relief.

[7] NOV's internal e-mails in November of 2022 further negate any argument that NOV's delay

Litigation as a defendant with Black Diamond – for injuries allegedly sustained as a result of XT pipe supplied by Black Diamond – would have confirmed to a reasonable party that affirmative action was necessary. Thus, NOV's decision to wait until February of 2025 to seek injunctive relief was unreasonable and weighs against a finding that – during the pendency of this litigation – NOV will suffer irreparable harm without injunctive relief.

Even assuming that NOV could establish a likelihood of success on the merits for its Lanham Act claims, which would entitle it to a rebuttable presumption of irreparable harm as to those claims, the Court finds that Black Diamond has sufficiently rebutted the presumption with evidence of NOV's unreasonable delay. *See GTE Corp. v. Williams*, 731 F.2d 676, 679 (10th Cir. 1984) ("Delay in seeking relief, however, undercuts any presumption that infringement alone has caused irreparable harm *pendente lite.* … We hold that when movant shows no specific harm other than the harm that is presumed to exist when there is a likelihood of confusion, movant's delay in bringing suit is an important factor in determining irreparable harm.").

Notably, in its reply, NOV did not attempt to overcome Black Diamond's rebuttal with additional evidence of irreparable harm, but merely argued against a finding of delay. Looking to NOV's motion for preliminary injunction, NOV briefly argues that it will suffer irreparable harm because consumers are being misled by Black Diamond, and "NOV bears the reputational harm when Black Diamond's inferior products fail to perform, as they did in the Snider Litigation." [Doc. No. 26, at 32]. At this juncture, and because there was no

---

could be attributed to its reliance on Mr. Biggerstaff's September 2021 e-mail regarding Black Diamond's use of XT-type on performance sheets.

determination of fault or cause in the Snider Litigation, the Court declines to issue injunctive relief based on speculation that Black Diamond's allegedly inferior products caused the incident underlying the Snider Litigation; that a similar incident may happen again; and that a similar incident would cause *irreparable* harm to NOV. Apart from referencing customer confusion and the Snider Litigation, NOV simply concludes that it "has suffered"[8] and will continue to suffer irreparable harm without injunctive relief. For these reasons, NOV has not met its burden to show irreparable harm. Given this determination, it is unnecessary to address the remaining factors governing preliminary injunctive relief. *See New Mexico Dep't of Game and Fish*, 854 F.3d at 1255.

## CONCLUSION

Because the Court finds that NOV has failed to sufficiently demonstrate irreparable harm, NOV's Motion for Preliminary Injunction [Doc. No. 26] is **DENIED**.

**IT IS SO ORDERED** this 7th day of April, 2025.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge

---

[8] "The purpose of a preliminary injunction is not to remedy *past harm* but to protect plaintiffs from irreparable injury that will surely result without their issuance." *Schrier*, 427 F.3d at 1267 (emphasis added).