IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| NATIONAL OILWELL VARCO, L.P., a Delaware limited partnership, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. CIV-24-1258-D |
| BLACK DIAMOND OILFIELD RENTALS, LLC, *et al.*, | ) ) ) ) |
| Defendants. | ) ) |

# ORDER

Before the Court is Defendant Black Diamond Oilfield Rentals, LLC's Motion to Dismiss Third Amended Complaint [Doc. No. 91]. Plaintiff National Oilwell Varco, L.P. (NOV) filed a response [Doc. No. 106], and Black Diamond replied [Doc. No. 117]. The matter is fully briefed and at issue.

## BACKGROUND

NOV manufactures oil and gas drill pipe and drill pipe connections under its eXtreme Torque ("XT") trademark. Grant Prideco designed XT drill pipe and connections with a "double shoulder" to eliminate a gap common in single-shoulder connections. Following a merger, NOV acquired Grant Prideco's XT patent and trademark. NOV's patent for the XT drill pipe and drill pipe connections expired in 2017.

Following the expiration of the XT patent, Black Diamond began offering its own double-shoulder connections, named EVRDRL. Black Diamond referred to its EVRDRL connections as "XT-type," allegedly because the oil and gas industry had come to associate

1

"XT" with a type of drill pipe, and not specifically with NOV's XT connections. Black Diamond alleges that it procured independent studies and certifications that found EVRDRL connections to be interchangeable and/or compatible with NOV's XT connections. NOV disputes any claim of interchangeability between its XT connections and Black Diamond's EVRDRL connections. NOV further disputes that XT has become a generic term; rather, NOV asserts that XT is well known in the oil and gas industry to refer exclusively to NOV's drill pipe and drill pipe connections.

In January of 2023, both NOV and Black Diamond were named as defendants in *Snider v. Cactus Drilling Co., LLC, et al.*, Case No. CJ-2023-7 (District Court of Grady County, Oklahoma) (Snider Litigation). The Snider Litigation alleged that Tanner Snider lost his life on a drilling rig "when a drill pipe connection failed downhole during trip out operations." [Petition, at ¶ 1, Snider Litigation, CJ-2023-7 (Grady County District Court)].[1] The petition references "more than 600 joints of NOV 4" XT-39 14 ppf drill pipe," which was allegedly manufactured by NOV and provided by Black Diamond. *Id.* at ¶¶ 2, 16. On February 27, 2024, the Snider Litigation plaintiffs dismissed without prejudice their claims against NOV, and the Snider Litigation ultimately resolved by settlement in October of 2024.[2]

On December 3, 2024, NOV filed this action. The operative complaint is the Third

---

[1] The Court takes judicial notice of the Snider Litigation, which is publicly accessible via http://www.oscn.net.

[2] Snider Litigation OSCN Docket Sheet, https://www.oscn.net/dockets/GetCaseInformation.aspx?db=grady&number=CJ-2023-7, accessed March 2, 2026.

Amended Complaint [Doc. Nos. 80, 84], which includes as defendants Black Diamond, Basin Holdings, LLC, Basin Energy, LLC, and Precision Engineering Solutions, LLC.[3] NOV asserts the following claims against Black Diamond: trademark infringement (15 U.S.C. § 1114); federal unfair competition and false designation of origin (15 U.S.C. § 1125(a)); federal false advertising (15 U.S.C. § 1125(a)); common-law trademark infringement; violations of the Oklahoma Deceptive Trade Practices Act (OKLA. STAT. tit. 78, §§ 51 *et seq.*); unjust enrichment; civil conspiracy; violations of the Defend Trade Secrets Act (18 U.S.C. § 1836 *et seq.*); violations of the Oklahoma Uniform Trade Secrets Act (OKLA. STAT. tit. 78, § 85 *et seq.*); misappropriation of confidential and proprietary business information; and unfair competition.

Before the Court is Black Diamond's Motion to Dismiss [Doc. No. 91], in which Black Diamond asserts that each of NOV's claims against it are barred by the pertinent statute of limitations or under the doctrine of laches.

## LEGAL STANDARD

A complaint may be dismissed upon a motion for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Pursuant to FED. R. CIV. P. 8(a)(2), a complaint must contain "a short and plain statement… showing that the pleader is entitled to relief." The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

---

[3] Defendants Wickander and Associates, Inc. and Jackie E. "Jack" Smith have been dismissed from this action. [Doc. Nos. 145, 146].

Dismissal is proper "if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the non-moving party, the complaint does not contain 'enough facts to state a claim to relief that is plausible on its face.'" *MacArthur v. San Juan Cnty.*, 497 F.3d 1057, 1064 (10th Cir. 2007) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

"Typically, facts must be developed to support dismissing a case based on the statute of limitations." *Herrera v. City of Espanola*, 32 F.4th 980, 991 (10th Cir. 2022). To that end, a statute of limitations defense may be resolved on a Rule 12(b) motion "when the dates given in the complaint make clear that the right sued upon has been extinguished." *Herrera*, 32 F.4th at 991 (citation omitted). "Indeed, it is only proper to dismiss a complaint based on an affirmative defense when the complaint itself admits all the elements of the affirmative defense." *Bistline v. Parker*, 918 F.3d 849, 876 (10th Cir. 2019).[4]

## DISCUSSION

### I. Lanham Act Claims (Claims I, II, III)

Black Diamond contends that NOV's Lanham Act claims for trademark infringement, federal unfair competition and false designation of origin, and false advertising are untimely. Because the Lanham Act does not provide a statute of limitations,

---

[4] Although Black Diamond repeatedly refers to documents outside the operative complaint, to include the Court's Order addressing the separate issue of NOV's delay in seeking emergency relief, the Court's present analysis is limited to the allegations of the Third Amended Complaint.

4

Black Diamond asserts that the Court should apply a strict two-year limitations period, borrowing Oklahoma's statute of limitations for "an action for injury to the rights of another, not arising on contract." *See* OKLA. STAT. tit. 12, § 95(A)(3). NOV contends that Oklahoma's three-year statute of limitations for "an action upon a liability created by statute other than a forfeiture or penalty" should be applied, but only in the context of a broader laches analysis. *See* OKLA. STAT. tit. 12, § 95(A)(2).

The Lanham Act does not contain a statute of limitations. However, it "expressly provides for defensive use of 'equitable principles, including laches.'" *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 678 n.15 (2014) (quoting 15 U.S.C. § 1115(b)(9)). The Tenth Circuit has not squarely addressed the statute of limitations for Lanham Act claims. In *United States v. Foote*, the Tenth Circuit noted that "[a]lthough some courts have read the Lanham Act to incorporate analogous state statutes of limitations, these limitations periods arise only by implication and are not 'expressly provided by law.'" 413 F.3d 1240, 1248 (10th Cir. 2005). In *Yeager v. Fort Knox Sec. Products*, the Tenth Circuit referred to courts that "have looked to analogous state limitation provisions and invoked presumptions in favor of (or against) laches defenses to claims brought outside (or inside) the analogous limitations period." 602 F. App'x 423, 431 (10th Cir. 2015) (unpublished).[5]

Upon review of *Foote* and *Yeager*, the Court declines to strictly apply an Oklahoma statute of limitations to NOV's Lanham Act claims. Instead, the Court will look to the most analogous Oklahoma statute of limitations only insofar as it aids the Court's laches

---

[5] Unpublished opinions are cited pursuant to FED. R. APP. P. 32.1(a) and 10th Cir. R. 32.1(A).

analysis. "The question of whether a claim is barred by laches must be determined by the facts and circumstances in each case, and according to right and justice. Laches in legal significance is not merely delay, but delay that works as a disadvantage to another." *Hitch Enterprises, Inc. v. Cimarex Energy Co.*, 859 F. Supp. 2d 1249, 1269 (W.D. Okla. 2012) (quoting *Stallings v. White*, 153 P.2d 813, 817 (Okla. 1944)).

Viewing the record in NOV's favor and accepting the allegations of the Third Amended Complaint as true, the Court finds that NOV's Lanham Act claims are not subject to dismissal via laches at this stage of proceedings. *See Hitch Enterprises, Inc.*, 859 F. Supp. 2d at 1269 ("[T]he Court finds that such equitable determinations, which entail more than a finding that the factual allegations of the first amendment are well-pleaded, are more appropriately resolved at a later stage in the lawsuit.").

As to NOV's knowledge of Black Diamond's alleged conduct, the Third Amended Complaint claims that NOV "ha[d] learned through recent discovery in this case that Jack Smith provided NOV's confidential and proprietary trade secrets to Black Diamond." [Doc. No. 84, at ¶ 62]. NOV's Third Amended Complaint also quotes a series of e-mails between Brian Christen and Christopher Biggerstaff, which were produced in May of 2025, which NOV alleges is the "first (and earliest) time NOV could have discovered the misappropriation of its trade secrets." *Id.* at 25 n.10. The Third Amended Complaint further avers that "on July 2, 2025, Black Diamond disclosed to NOV for the first time that … the company possessed the XT® Thread Detail Drawings." *Id.* at ¶ 65. The complaint further provides that, in July of 2020, "NOV formally warned Black Diamond about infringing on NOV's trademarks on Black Diamond's website," but that "[w]ebsite infringement was far

6

different than the other infringement described herein, which implicated spec sheets, delivery ticket assemblies, customer communications, as well as drill pipe bids and quotes provided by Black Diamond to customers." *Id.* at ¶ 83.

In response to Black Diamond's motion, NOV alleges that it first learned that Black Diamond was passing off EVRDRL connections as XT connections in July 2024, and it was only after the Snider Litigation that NOV began to discover that Black Diamond was marketing or selling EVRDRL connections as "XT Type." [Doc. No. 106, at 19]. Without further factual development as to when NOV's Lanham Act claims accrued, whether any delay by NOV was reasonable under the circumstances, and whether Black Diamond was prejudiced by any unreasonable delay, the Court finds that NOV's Lanham Act claims are not subject to dismissal under the doctrine of laches at this stage of proceedings.

## II. Common-Law Trademark Infringement (Claim IV)

Black Diamond contends that NOV's common-law trademark infringement claim is untimely because it was brought after two years from when "NOV knew or should have known of its trademark claims." [Doc. No. 91, at 8].

First, the Court agrees with Black Diamond that the Court should apply a two-year statute of limitations to NOV's common-law trademark infringement claim since it is "an action for injury to the rights of another, not arising on contract." *See* OKLA. STAT. tit. 12, § 95(A)(3). Although NOV contends that its common-law trademark claim should be governed by the three-year statute of limitations for "an action upon a liability created by statute," NOV's common-law trademark claim is not created by statute. And NOV cites to no legal authority in support of its position that the three-year limitations period applies

7

merely because the trademark claim is similar to one brought under the Oklahoma Defensive Trade Practices Act, for which the three-year period clearly applies.

However, even applying a two-year statute of limitations, the Court finds that NOV's common-law trademark infringement claim is not subject to dismissal. Based on the allegations of the Third Amended Complaint as set forth in Section I, above, factual development is needed as to when NOV's common-law trademark claim accrued. Although Black Diamond references NOV's warnings to Black Diamond in July of 2020, the Third Amended Complaint repeatedly asserts that those earlier warnings were merely related to website infringement, and not the trademark infringement alleged in this litigation. Viewing the Third Amended Complaint's allegations in NOV's favor, as the Court must, NOV's common-law trademark infringement claim survives dismissal.[6]

### III.   Misappropriation Claims (Claims IX, X, and XI)

NOV also brought claims against Black Diamond for allegedly violating the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq*. (DTSA), violating the Oklahoma Uniform Trade Secrets Act, OKLA. STAT. tit. 78, § 85 *et seq*. (OUTSA), and misappropriating confidential and proprietary business information. These claims are based on NOV's allegations that Black Diamond misappropriated NOV's trade secrets and otherwise confidential business information with respect to NOV's XT® drawings and other technical information. The DTSA and OUTSA claims are governed by a three-year statute

---

[6] For the same reasons, NOV's trademark-related claim under the Oklahoma Deceptive Trade Practices Act (Claim No. V), which is governed by a three-year statute of limitations pursuant to OKLA. STAT. tit. 12, § 95(A)(2), will not be dismissed.

of limitations, and each claim accrues on "the date on which the misappropriation with respect to which the action would relate is discovered or by the exercise of reasonable diligence should have been discovered." *See* 18 U.S.C. § 1836(d); *see also* OKLA. STAT. tit. 78, § 91. And, for the same reasons set forth in Section II, above, the Court applies a two-year statute of limitations to NOV's common-law misappropriation claim as an "action for injury to the rights of another, not arising on contract." *See* OKLA. STAT. tit. 12, § 95(A)(3).

Black Diamond asserts that NOV's misappropriation claims are untimely "because they accrued upon NOV's knowledge of Black Diamond's claims of interchangeability beginning in 2018 and no later than September of 2021." [Doc. No. 91, at 18]. In response, NOV contends that "[o]nly through discovery produced on or after May of 2025 did NOV first learn that: (1) [Black Diamond] and the Engineering Defendants *used* the torque-tension equations and other confidential information in designing EVRDRL; (2) [Black Diamond] *acquired* the torque-tension equations and other confidential information from another former employee in 2017; and (3) [Black Diamond] *stole* – and still possesses – the XT® Thread Detail Drawings." [Doc. No. 106, at 28] (citing Doc. No. 84, at ¶¶ 60-65).

As with NOV's trademark claims, the Court is not convinced that NOV's apparent knowledge of Black Diamond's claims of interchangeability should have also informed NOV that Black Diamond had misappropriated its trade secrets or other confidential information. As alleged in NOV's Third Amended Complaint, NOV did not discover that Jack Smith had allegedly provided Black Diamond with NOV's confidential and proprietary trade secrets until Black Diamond produced a series of emails in May of 2025.

9

[Doc. No. 84, at ¶ 62]. NOV also cites to various e-mails in support of its misappropriation claims, all of which were produced in May of 2025. *Id.* at 25 n.10. Black Diamond's allegation that NOV should have known—based on Black Diamond's claims of interchangeability—that Black Diamond had misappropriated their trade secrets and confidential information does not warrant dismissal at this stage of proceedings.

## IV. Unjust Enrichment (Claim VI) and Unfair Competition (Claim XII)

NOV's unjust enrichment and unfair competition claims are premised on the conduct underlying NOV's trademark and misappropriation claims against Black Diamond. The Court applies a two-year statute of limitations to both claims. *See* OKLA. STAT. tit. 12, § 95(A)(3) (two-year statute of limitations for "an action for injury to the rights of another, not arising on contract"). And, for the same reasons the Court declines to dismiss NOV's trademark and misappropriation claims as untimely, the Court also declines to dismiss NOV's unjust enrichment and unfair competition claims based on the same conduct.

## V. Civil Conspiracy (Claim VIII)

In its motion to dismiss, Black Diamond asserts that NOV's civil conspiracy claim should be dismissed only because "NOV's other claims against Black Diamond should be dismissed," and a civil conspiracy claim requires an underlying tort. [Doc. No. 91, at 22]. Here, because NOV's tort claims survive dismissal, Black Diamond's motion will also be denied as to the civil conspiracy claim.

## CONCLUSION

For these reasons, Black Diamond Oilfield Rentals, LLC's Motion to Dismiss Third

Amended Complaint [Doc. No. 91] is **DENIED**.

    **IT IS SO ORDERED** this 5th day of March, 2026.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge