## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| NATIONAL OILWELL VARCO, L.P., a Delaware limited partnership, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. CIV-24-1258-D ) |
| BLACK DIAMOND OILFIELD RENTALS, LLC, a Delaware limited liability company, BASIN HOLDINGS, LLC, a Delaware limited liability company, and BASIN ENERGY LLC, a Delaware limited liability company, | ) ) ) ) ) ) |
| Defendants. | ) |

### BLACK DIAMOND OILFIELD RENTALS, LLC'S
### FIRST AMENDED COUNTERCLAIMS

Black Diamond Oilfield Rentals, LLC ("Black Diamond") provides these First Amended Counterclaims against National Oilwell Varco, L.P.'s ("Plaintiff" or "NOV").

### NATURE OF THE ACTION

1. Black Diamond's Counterclaims seek declaratory judgment and other relief under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, as well as monetary and injunctive relief regarding and to prevent violations of the Sherman Act, 15 U.S.C. §§ 1 *et seq.*, and Oklahoma's Antitrust Reform Act, 79 Okla. Stat. §§ 201 *et seq.*

### JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of these Counterclaims under 15 U.S.C. § 1121 as well as 28 U.S.C. §§ 1331, 1338, and 2201-2202. This Court

has supplemental jurisdiction over the subject matter of Black Diamond's state court causes of action pursuant to 28 U.S.C. § 1367.

3. Plaintiff has submitted to the personal jurisdiction of this Court by and through its claims against Black Diamond. Venue is proper in this District as a result.

## PERTINENT FACTUAL BACKGROUND

4. In 1999, the United States Patent and Trademark Office ("USPTO") issued U.S. Patent No. 5,908,212 to Grant Prideco, Inc. ("Grand Prideco") for an "Ultra High Torque Double Shoulder Tool Joint" (hereinafter the "'212 Patent"), which expired in approximately 2017.

5. Grant Prideco applied for and obtained U.S. Trademark Registration No. 2,466,236 for "XT" in connection with "threaded metal drill pipe connections used on metal drill pipe for the drilling of oil and gas well and other earth boreholes" in Internal Class 006 (hereinafter the "'236 Registration").

6. Grand Prideco was acquired by NOV in 2008 at which time Grand Prideco held approximately 60% of the global market share for drill pipe.

7. Grant Prideco and its successors, including Plaintiff, claim to have used and use the designation "XT" with connections manufactured by or for Plaintiff or Grant Prideco that are covered by the '212 Patent (each, an "NOV XT Connection") before and after expiration of the '212 Patent.

8. Plaintiff is currently the record owner of the '236 Registration. Plaintiff claims that "XT" is a protectable trademark owned and licensed by Plaintiff, and that Black

Diamond's use of "XT" (and derivatives thereof) infringes Plaintiff's rights in "XT" under common law and the '236 Registration. Black Diamond disputes the same.

9. NOV also claims that NOV XT Connections use a proprietary and confidential thread profile that cannot be lawfully duplicated by others, which Black Diamond denies.

10. Upon information and belief, the NOV XT Connection was developed and/or marketed for use in horizontal drilling operations. *See* Dkt. 84 at ¶ 20.

11. Although horizontal drilling is a technique that dates to the 1920s, its use in U.S. well operations has increased drastically over time, and particularly since 1999.

12. According to the American Association of Petroleum Geologists, 51 horizontal wells were drilled in 1987 and 4,000 in 1997. *See* https://www.aapg.org/news-and-media/details/explorer/articleid/20325/horizontal-wells-now-common.

13. U.S. Energy Information Association data reflects that horizontal drilling accounted for about 15% of U.S. crude oil production in tight oil formations in 2004 and 96% by the end of 2018. *See* https://www.eia.gov/todayinenergy/detail.php?id=39752.

14. According to NOV's pleadings in this case, "NOV customers in need of post-purchase repairs [of NOV XT Connections] agree to use only NOV-approved licensees." Dkt. 84 at ¶ 39. Upon information and belief, such licensees must pay NOV a royalty for servicing or repairs that they perform and a majority of such licensees are subsidiaries or affiliates of NOV or entities in which NOV has direct or indirect ownership. Upon information and belief, such licensees are also contractually prohibited from working on non-API connections of NOV's competitors while an NOV licensee.

15. NOV voids product warranties for its customers and former Grant Prideco customers that use connections provided by Black Diamond and others in competition with NOV XT Connections.

16. Those competing with NOV for service to or replacement of NOV XT Connections are and have been characterized by NOV as "bootleggers."

17. NOV does not support contentions by such "bootleggers" that their competing connections are interchangeable and/or compatible with NOV XT Connections or drill pipe threaded to NOV XT Connection specifications.

18. NOV claims and has claimed that Black Diamond falsely advertises its EVRDRL connections as interchangeable and/or compatible with NOV XT Connections.

19. NOV has never performed testing to determine whether NOV XT Connections and Black Diamond's EVDRL connections are interchangeable or compatible.

20. Aside from the connection(s) of one third-party NOV considered acquiring, NOV has never performed testing to determine the interchangeability and compatibility of NOV XT Connections with competing "bootlegged" connections.

21. NOV has coerced third-party certification companies to try and keep such companies from providing NOV's competitors with certifications that their products are interchangeable and/or compatible with NOV XT Connections.

22. For example, NOV added Wickander as a defendant to this litigation due to Wickander's certifications of EVRDRL products and then dismissed Wickander pursuant to a settlement agreement before Wickander filed a responsive pleading.

23.     As another example, after Fearnley Group (also known as Fearnley and Proctor) ("Fearnley") provided Black Diamond with a 2018 certification that EVRDRL 3.90 was "fully interchangeable" and had "physical compatibility" with NOV XT Connection type XT39, NOV coerced Fearnley to remove references of interchangeability and compatibility from Fearnley's future certifications of Black Diamond's EVRDRL products.

24.     NOV also continues to represent to the public that NOV XT Connections are patented when they are not as shown by marketing NOV publishes from its website found at     https://assets.nov.com/NCP4N68N/at/xk3c39k4937tw9p6mcn6snvk/D6B1004506-MKT-001_XT.pdf  and  https://www.nov.com/products/xt-connections  that  represents "[t]he Grant Prideco eXtreme Torque Connection is a patented, high-performance rotary-shouldered connection[.]" A true and correct image of this marketing is shown below:



## High-performance connections for extreme drilling conditions.

The Grant Prideco™ eXtreme Torque Connection is a patented, high-performance rotary-shouldered connection available for pipe sizes from 2 ⅜ to 6 ⅝ inches. Incorporating a second-generation double shoulder design with a proprietary thread profile, these connections provide improved hydraulics and more torque than connections of comparable dimensions. XT connections often allow for the use of larger drill pipe for a given hole size while maintaining fishability, and serve as the market reference for deepwater and extended reach drilling.

**Pressure Loss Inside and Outside Drill Pipe in 8 ½" Hole with 12 PPG Mud**

— 5 ½" drill pipe with 5 ½" FH (7 ¼" x 3 ½")     — 5 ⅞" drill pipe with XT 57 (7" x 4 ¼")

Pressure Loss

30% reduction at typical flow rate

25.     During her deposition in the *Snider* litigation, NOV's corporate representative, Ludivine Laurent, testified as follows:

Q. (BY MS. COFFIN) Who are the direct competitors of XT39 in that, in that market?
A. I'm -- could you be more specific on which market you are talking about?
Q. The market in which XT -- of which XT39 is a part?
A. For rental or manufacture?
Q. Manufacturing. Fair question.
A. Competitors -- it's a difficult thing to answer because there is in Grant Prideco's position no direct equivalent to XT39 in that if a rig has XT39 from Grant Prideco, there is no other product out there that should or can be run with it. So directly with XT39, no one.

26.     There are several barriers to entry in the market of oil and gas services and products, particularly supplying drilling tools and drill pipe. These include, but are not limited to: (a) the high capital cost associated with equipment needed to make and transport products; (b) high capital cost associated with acquiring pipe or the raw materials to fabricate pipe and tool joints; (c) high operating expenses associated with staffing engineers and others with similar technical degrees or experience; (d) operational constraints and costs from insurance premiums and payment cycles from clients that generally last longer than 30 days; (e) rising and sometimes volatile costs of raw materials such as steel as well as fuel necessary for the transportation of goods; and (f) changes in

domestic policy and regulations concerning oil and gas exploration and use as well as foreign relation creating volatile changes in demand.

27.    There are other barriers to entering the market of replacement or servicing NOV XT Tool Joints in addition to those mentioned in the preceding paragraph. These include: (a) entrenched buyer preference against NOV competitors due to, *inter alia,* NOV's prior patenting of the NOV XT Connection and/or NOV's pejorative characterization of such entrants as "bootleggers"; (b) voiding of product warranties and agreements requiring use of NOV licensees; and (c) high costs for third-party testing and certifications of interchangeability and/or compatibility.

### COUNTERCLAIM COUNT I
(Violation of Section 1 of the Sherman Act, 15 U.S.C. § 1)

28.    Black Diamond re-alleges and incorporates by reference each allegation set forth in the preceding paragraphs as though alleged in full herein.

29.    NOV has tied the sale of new NOV XT Connections to replacing and servicing the same and pipe connected therewith in violation of Section 1 of the Sherman Act.

30.    New NOV XT Connections are in a market of drill pipe connections for complex drilling operations within the United States and are in competition with connections offered and sold by third parties, including competing API connections. *See, e.g.,* Dkt. 84 at ¶¶ 20-23. By contrast, replacement and servicing of NOV XT Connections and pipe connected therewith within the United States (the "Tied Market") is separate and distinct and consists only of NOV XT Connections and drill pipe connected therewith.

31.     As testified to by NOV's corporate representative, NOV has no direct competitors in the Tied Market. *See* ¶ 25, *supra.* As also alleged by NOV, "NOV customers in need of post-purchase repairs [for NOV XT Connections] agree to use only NOV-approved licensees." Dkt. 84 at ¶ 39.  NOV voids the warranty of NOV XT Connections and products provided therewith in the event customers of NOV XT Connections use replacement products or services of non-NOV licensees. NOV characterizes third-party competitors in the market of replacing and/or servicing of NOV XT Connections as "bootleggers" to actual and prospective customers and contends – without performing tests on third-party products – that such products are not interchangeable or compatible with NOV XT Connections, which Black Diamond denies. NOV coerces third party certification companies in an effort to prevent them from providing NOV's competitors from obtaining certifications concerning the interchangeability and compatibility of their products with NOV XT Connections. NOV also claims that the threading of NOV XT Connections is proprietary and confidential and that use or reference to "XT" to reference double-shouldered connections is a violation of NOV's trademark rights, all of which Black Diamond denies.

32.     When acquiring NOV XT Connections originally, customers lack access to all requisite information concerning replacing and/or servicing of the same. This is due to, *inter alia,* (a) the fact that NOV XT Connections have a useful life of at least five or more years and such information is not readily available at the time of the original purchase; (b) such information depends on market forces and entrants that change and/or do not exist between the time of original acquisition to when repair or replacement is needed; and/or

(c) customers in need of replacing and/or servicing NOV XT Connections are not the original acquirer of the same and had no input as to what connection to use (NOV XT Connection, API or otherwise) but must use NOV or an NOV licensee at the time of repair or replacement.

33.    NOV seeks to leverage and maintain the monopoly granted to it under the now-expired '212 Patent in the Tied Market by requiring that replacements for and servicing of NOV XT Connections be provided solely by NOV licensees that are directly or indirectly owned by NOV and/or required to pay NOV royalties.

34.    NOV's actions have the effect of: (a) limiting choices of customers/buyers in need of replacement or servicing NOV XT Connections; (b) artificially increasing prices to accommodate for license/royalty fees charged by NOV; (c) foreclosing entry and/or increasing barriers of entry into the Tied Market; and (d) prolonging the now-expired patent monopoly under the '212 Patent in contravention of federal patent and antitrust laws. Testimony of NOV's representatives shows NOV intentionally seeks such anticompetitive effects. *See* ¶ 25, *supra.*

35.    NOV's conduct has and has had a substantial effect on interstate commerce in the market for replacing and servicing NOV XT Connections. NOV claims to have had "substantial sales of drill pipe and drill pipe connections sold under the XT® mark."  Dkt. 84 at ¶ 33. NOV XT Connections are targeted at the horizontal drilling sector which now predominates U.S. drilling operations, and which increased exponentially from 1999 through 2017 while the '212 Patent was subsisting.  In the same period, NOV acquired Grant Prideco while Grant Prideco held approximately sixty percent (60%) of the global

market share for drill pipe which it also leverages in furtherance of its unlawful antitrust activity.

36.    The anticompetitive actions of NOV described herein are not believed to be exhaustive and, upon information and belief, additional such conduct shall be uncovered in the course of discovery.

37.    NOV's anticompetitive actions have harmed Black Diamond by causing Black Diamond to lose business from prospective customers in an amount to be determined at trial. NOV's anticompetitive actions have also caused Black Diamond to incur increased costs by having to acquire pipe, replacement tools and servicing directly from NOV or its licensees at increased costs, in each case, in an amount to be determined at trial. Black Diamond is entitled to its damages, exemplary damages, injunctive relief, attorneys' fees and costs in an amount to be determined at trial that are caused by NOV's violation(s).

**COUNTERCLAIM COUNT II**
(Violation of Section 2 of Sherman Act, 15 U.S.C. § 2)

38.    Black Diamond re-alleges and incorporates by reference each allegation set forth in the preceding paragraphs as though alleged in full herein.

39.    Through its anticompetitive tying described above, NOV has willfully acquired and maintained monopoly power or attempted to acquire and maintain monopoly power in the Tied Market.

40.    In addition, or in the alternative, NOV has willfully acquired and maintained monopoly power or attempted to acquire and maintain monopoly power in the Tied Market through NOV's anticompetitive conduct described herein.  As set forth above, NOV's

corporate representative has testified that NOV has no direct competitors in the Tied Market. *See* ¶ 25, *supra.* As also noted above, NOV requires that "NOV customers in need of post-purchase repairs [for NOV XT Connections] agree to use only NOV-approved licensees." Dkt. 84 at ¶ 39.  NOV also voids the warranty of NOV XT Connections and products provided therewith in the event customers of NOV XT Connections use replacement products or services of non-NOV licensees. NOV characterizes third-party competitors in the market of replacing and/or servicing of NOV XT Connections as "bootleggers" to actual and prospective customers and contends – without performing tests on third-party products – that such products are not interchangeable or compatible with NOV XT Connections, which Black Diamond denies. NOV coerces third party certification companies in an effort to prevent them from providing NOV's competitors from obtaining certifications concerning the interchangeability and compatibility of their products with NOV XT Connections. NOV also claims that the threading of NOV XT Connections is proprietary and confidential and that use or reference to "XT" to reference double-shouldered connections is a violation of NOV's trademark rights, all of which Black Diamond denies. NOV also pursues legal threats and claims in connection with the above, all in an effort to maintain or obtain a monopoly in the Tied Market.

41.    The anticompetitive actions of NOV described herein are not believed to be exhaustive and, upon information and belief, additional such conduct shall be uncovered in the course of discovery.

42.    NOV's anticompetitive actions have harmed Black Diamond by causing Black Diamond to lose business from prospective customers in an amount to be determined

11

at trial. NOV's anticompetitive actions have also caused Black Diamond to incur increased costs by having to acquire pipe, replacement tools and servicing directly from NOV or its licensees at increased costs, in each case, in an amount to be determined at trial. Black Diamond is entitled to its damages, exemplary damages, injunctive relief, attorneys' fees and costs in an amount to be determined at trial that are caused by NOV's violation(s).

## COUNTERCLAIM COUNT III
(Violation of Oklahoma Antitrust Reform Act, 79 Okla. Stat. §§ 201 *et seq.*)

43.     Black Diamond re-alleges and incorporates by reference each allegation set forth in the preceding paragraphs as though alleged in full herein.

44.     Through its tying and/or its anticompetitive conduct described herein, NOV has violated §203(A) of the Oklahoma Antitrust Reform Act through acts and agreements in restraint of trade or commerce within the State of Oklahoma.

45.     In addition, through its tying and/or its anticompetitive conduct described herein, NOV has monopolized or attempted to monopolize the market for servicing and repairing NOV XT Connections and pipe connected thereto within the State of Oklahoma in violation of §203(B) of the Oklahoma Antitrust Reform Act.

46.     The anticompetitive actions of NOV described herein are not believed to be exhaustive and, upon information and belief, additional such conduct shall be uncovered in the course of discovery.

47.     NOV's anticompetitive actions have harmed Black Diamond by causing Black Diamond to lose business from prospective customers in an amount to be determined at trial. NOV's anticompetitive actions have also caused Black Diamond to incur increased

costs by having to acquire pipe, replacement tools and servicing directly from NOV or its licensees at increased costs, in each case, in an amount to be determined at trial. Black Diamond is entitled to its damages, exemplary damages, injunctive relief, attorneys' fees and costs in an amount to be determined at trial that are caused by NOV's violation(s).

## COUNTERCLAIM COUNT IV
(Declaratory Judgment of Genericness)

48.    Black Diamond re-alleges and incorporates by reference each allegation set forth in the preceding paragraphs as though alleged in full herein.

49.    Upon information and belief, the primary significance of the designation "XT" to relevant consumers is as a type of threaded drill pipe connection for the drilling of oil and gas wells and other earth boreholes and/or drill pipe with such connections, such that the term "XT" does not serve to indicate the source of any product, including (but not limited to) Plaintiff.

50.    Plaintiff claims that "XT" is a protectable trademark for which Plaintiff has exclusive rights and has demanded that Black Diamond cease and desist use of "XT" and derivatives thereof.

51.    Black Diamond disputes Plaintiff's allegations and contends that the designation "XT" (and derivatives thereof) is generic.

52.    Plaintiff's allegations of trademark infringement place a cloud over Black Diamond's ongoing business and the marketing thereof and may cause uncertainty among others in the marketplace, leading Black Diamond to lose revenues and/or business opportunities.

13

53.    An actual and justiciable controversy exists between Black Diamond and Plaintiff and a judicial declaration is necessary and appropriate so that Black Diamond's may ascertain its rights.

54.    Wherefore, Black Diamond prays for the following relief:

a.    an Order by the Court declaring that the designation "XT" is generic when used in connection with a type of threaded drill pipe connection and drill pipe with such connections;

b.    an Order by the Court declaring that, because of the generic nature of "XT," use of "XT" by Black Diamond cannot, has not and does not infringe any legitimate rights of Plaintiff, whether under the Lanham Act, state statutes or at common law; and

c.    an Order by the Court declaring that Black Diamond may continue to use the designation "XT" without infringing any legitimate rights of Plaintiff, whether under the Lanham Act, state statutes or at common law.

**COUNTERCLAIM COUNT V**
(Cancellation of U.S. Trademark Reg. No. 2,466,236)

55.    Black Diamond re-alleges and incorporates by reference each allegation set forth in the preceding paragraphs as though alleged in full herein.

56.    Plaintiff is the record owner of the '236 Registration, which Plaintiff contends by and through the Complaint has been infringed by Black Diamond.

14

57. Black Diamond disputes Plaintiff's allegations and the validity of U.S. Trademark Reg. No. 2,466,236.

58. As set forth above, the designation "XT" (and derivatives thereof) is generic and does not indicate a source of goods or services.

59. As a result, U.S. Trademark Reg. No. 2,466,236 is invalid and unenforceable.

60. Wherefore, Black Diamond prays for an Order by the Court declaring that Plaintiff's U.S. Trademark Reg. No. 2,466,236 is invalid and unenforceable, and directing the U.S. Patent and Trademark Office to cancel the same.

## PRAYER FOR RELIEF

WHEREFORE, Black Diamond respectfully requests that judgment be entered in its favor on each of the above Counterclaims and prays that the Court grant the relief requested above as well as such other and further relief to which Black Diamond is entitled under law and equity, including actual damages, exemplary damages, declaratory relief and injunctive relief.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Black Diamond respectfully requests a jury trial on all issues triable thereby.

/s/ Zachary A.P. Oubre
Michael J. LaBrie, OBA #16253
Zachary A.P. Oubre, OBA #30666
Zachary L. Neighbors, OBA #34739
McAfee & Taft A Professional Corporation
8th Floor, Two Leadership Square
211 North Robinson Avenue
Oklahoma City, OK  73102
Telephone:    (405) 235-9621
Facsimile:    (405) 235-0439
mike.labrie@mcafeetaft.com
zach.oubre@mcafeetaft.com
zach.neighbors@mcafeetaft.com
**Attorneys for Defendant**
**Black Diamond Oilfield Rentals, LLC**

16