**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| NATIONAL OILWELL VARCO, L.P., a Delaware limited partnership, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. CIV-24-1258-D |
| BLACK DIAMOND OILFIELD RENTALS, LLC, *et al.*, | ) | |
| Defendants. | ) | |

**ORDER**

Before the Court is Defendant Precision Engineering Solutions, LLC's (Precision) Motion to Dismiss Third Amended Complaint and Brief in Support [Doc. No. 133]. Plaintiff National Oilwell Varco, L.P. (NOV) filed a response [Doc. No. 151], and Precision replied [Doc. No. 156]. The matter is fully briefed and at issue.

**BACKGROUND**

Plaintiff NOV manufactures oil and gas drill pipe and drill pipe connections under its eXtreme Torque ("XT") trademark. Grant Prideco designed XT drill pipe and connections with a "double shoulder" to eliminate a gap common in single-shoulder connections. Following a merger, NOV acquired Grant Prideco's XT patent and trademark. NOV's patent for the XT drill pipe and drill pipe connections expired in 2017.

Following the expiration of the XT patent, Defendant Black Diamond Oilfield Rentals, LLC ("Black Diamond") began offering its own double-shoulder connections, named EVRDRL. Black Diamond referred to its EVRDRL connections as "XT-type," allegedly

because the oil and gas industry had come to associate "XT" with a type of drill pipe, and not specifically with NOV's XT connections. Black Diamond alleges that it procured independent studies and certifications that found EVRDRL connections to be interchangeable and/or compatible with NOV's XT connections. NOV disputes any claim of interchangeability between its XT connections and Black Diamond's EVRDRL connections. NOV further disputes that XT has become a generic term; rather, NOV asserts that XT is well known in the oil and gas industry to refer exclusively to NOV's drill pipe and drill pipe connections.

In January 2023, both NOV and Black Diamond were named as defendants in *Snider v. Cactus Drilling Co., LLC, et al.*, Case No. CJ-2023-7 (District Court of Grady County, Oklahoma) (the "Snider Litigation"). The Snider Litigation alleged that Tanner Snider lost his life on a drilling rig "when a drill pipe connection failed downhole during trip out operations." [Petition, at ¶ 1, Snider Litigation, CJ-2023-7 (Grady County District Court)].[1] The petition references "more than 600 joints of NOV 4[] XT-39 14ppf drill pipe," which was allegedly manufactured by NOV and provided by Black Diamond. *Id.* at ¶¶ 2, 16. On February 27, 2024, the Snider Litigation plaintiffs dismissed without prejudice their claims against NOV, and the Snider Litigation ultimately resolved by settlement in October of 2024.[2]

---

[1] The Court takes judicial notice of the Snider Litigation, which is publicly accessible via http://www.oscn.net (last accessed Sept. 22, 2026).

[2] Snider Litigation OSCN Docket Sheet, https://www.oscn.net/dockets/GetCaseInformation.aspx?db=grady&number=CJ-2023-7, (last accessed Sept. 22, 2026).

On December 3, 2024, NOV filed this action. The operative complaint is the Third Amended Complaint [Doc. Nos. 80, 84], which includes as defendants Black Diamond, Basin Holdings, LLC, and Basin Energy, LLC (the "Basin Defendants"), and Precision.[3]

Precision is a Louisiana limited liability company and engineering firm specializing in the energy sector with its principal place of business in New Iberia, Louisiana.

For its claims against Precision, NOV contends that Precision assisted Black Diamond in bootlegging the XT drill pipe by "designing" the EVRDRL tool joint connection. NOV asserts the following claims against Precision: civil conspiracy; violations of the Defend Trade Secrets Act (18 U.S.C. § 1836 *et seq*.); violations of the Oklahoma Uniform Trade Secrets Act (OKLA. STAT. tit. 78, § 85 *et seq*.); misappropriation of confidential and proprietary business information; unfair competition; and negligence.

Before the Court is Precision's Motion to Dismiss [Doc. No. 133], in which Precision asserts that the Court lacks personal jurisdiction over it.[4]

## STANDARD OF DECISION

NOV "bears the burden of establishing personal jurisdiction over defendant." *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000); *see Dental Dynamics, LLC v. Jolly Dental Group, LLC*, 946 F.3d 1223, 1228 (10th Cir. 2020).

---

[3] Defendants Wickander and Associates, Inc. and Jackie E. "Jack" Smith have been dismissed from this action. [Doc. Nos. 145, 146].

[4] Precision also incorporates Black Diamond's argument that NOV's claims are time-barred. For the same reasons as stated in the Court's Order [Doc. No. 161] on Black Diamond's Motion to Dismiss [Doc. No. 91], the Court denies Precision's incorporated motion on this basis.

Where, as here, the issue is presented for decision on the basis of allegations and affidavits or written materials, NOV "need only make a prima facie showing that jurisdiction exists." *Intercon*, 205 F.3d at 1247 (internal quotation and citation omitted).

At this stage, the Court must accept "'as true all well-pled (that is, plausible, non-conclusory, and non-speculative) facts alleged in plaintiff['s] complaint'" and "resolve any factual disputes in the plaintiff's favor." *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) (quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008)). However, "even well-pleaded jurisdictional allegations are not accepted as true once they are controverted by affidavit." *Shrader*, 633 F.3d at 1248. When a moving defendant submits an affidavit based on personal knowledge, the plaintiff must show a dispute of fact "through specific averments, verified allegations, or other evidence" such as affidavits or other written materials. *Shrader*, 633 F.3d at 1248; *Dental Dynamics*, 946 F.3d at 1228.

"To show personal jurisdiction over a nonresident in a diversity action, [the plaintiff] must demonstrate that jurisdiction is proper under the laws of the forum state—in this case Oklahoma—and that the exercise of jurisdiction complies with the Due Process Clause of the Fourteenth Amendment." *Dental Dynamics*, 946 F.3d at 1228. Under Oklahoma law, the personal jurisdiction inquiry is simply the due process analysis. *Id.* at 1229. The familiar due process standard requires "minimum contacts" between the defendant and the forum state and a finding that the exercise of jurisdiction comports with "fair play and substantial justice." *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 297 (1980); *Intercon*, 205 F.3d at 1247.

## DISCUSSION

### I. Minimum Contacts

The minimum contacts standard may be satisfied by showing general or specific jurisdiction. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *see also Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 261-62 (2017). General jurisdiction refers to a court's power to hear claims against a nonresident defendant whose "affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *See Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (quoting *Goodyear*, 564 U.S. at 919).

NOV relies solely on specific jurisdiction in this case. Specific jurisdiction requires that "'the *suit*' must 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*.'" *Bristol-Myers*, 582 U.S. at 262 (quoting *Daimler*, 571 U.S. at 127) (emphasis added in *Bristol-Myers*). Specific jurisdiction "requires, first, that the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' defendant's forum-related activities.'" *Dudnikov*, 514 F.3d at 1071 (quoting *Burger King*, 471 U.S. at 472).

#### A. Purposeful direction

To show that Precision purposefully directed its activities at Oklahoma, NOV must establish "three elements: (1) an intentional action; (2) expressly aimed at the forum state; and (3) with knowledge that the brunt of the injury would be felt in the forum state." *Dental Dynamics, LLC*, 946 F.3d at 1231. The Tenth Circuit "has followed the Supreme Court in

requiring a particular focus by the defendant on the forum State to satisfy the purposeful-direction requirement." *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 843 (10th Cir. 2020).

Purposeful direction can be satisfied by showing a defendant's "continuing relationships with forum state residents," "deliberate exploitation of the forum state market," or "harmful effects in the forum state." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 905 (10th Cir. 2017). NOV relies on the "harmful effects" test to show that the Court has personal jurisdiction over Precision. [Doc. No. 151, at 17]. The harmful effects test requires NOV to make three showings: that "[Precision] (a) commit[ed] 'an intentional action'; (b) that [was] 'expressly aimed at the forum state'; (c) with 'knowledge that the brunt of the injury would be felt in the forum state.'" *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 96 (10th Cir. 2012) (quoting *Dudnikov,* 514 F.3d at 1072).

In its motion to dismiss, Precision asserts that NOV has not met its burden to establish Precision's minimum contacts with Oklahoma for purposes of specific jurisdiction. Precision contends that it is a "bridge too far" for NOV to attempt to establish personal jurisdiction "on the sole basis that Precision provided engineering design services to Black Diamond (a Delaware LLC with its principal place of business in Texas)," which "subsequently manufactured a product that was marketed to, and used by, oil and gas operators in Oklahoma." [Doc. No. 133, at 6].

In support of its motion, Precision has provided the Declaration of Jeremy Hebert [Doc. No. 133-1], which includes the following statements by Mr. Hebert, the managing member of Precision:

- Precision offers engineering and drafting, failure analysis, machining, material testing, and third party management services to customers;
- Precision is an LLC organized under the laws of Louisiana, with its principal place of business in Louisiana;
- Precision has no offices outside of Louisiana and, with the exception of one employee who works out of his home in Texas, all of Precision's employees are located in Louisiana;
- Precision does not directly or intentionally advertise or solicit business in Oklahoma, and owns no real estate, bank accounts, or other property interests in Oklahoma;
- Precision has received equipment shipped from Oklahoma from at least one customer for the purpose of mechanical testing or failure analysis (unrelated to the equipment or allegations in this matter);
- Precision has never performed services in Oklahoma; and
- None of the work performed by Precision for Black Diamond was performed in Oklahoma.

[Doc. No. 133-1, at ¶¶ 2-7].

Based on the foregoing, Precision contends that NOV has failed to show that it purposefully directed its activities at Oklahoma and that NOV's injuries arise out of those forum-related activities.

In response, NOV contends that Precision purposely directed its activities at Oklahoma by performing engineering services for Black Diamond and the Basin Defendants through the creation of "false and misleading Data Sheets" which were marketed to Oklahoma customers by Black Diamond. [Doc. No. 152, at 18]. Citing the Data Sheets' references to Black Diamond's Oklahoma City office in their headers, NOV asserts that this

shows that Precision cannot seriously dispute that it did not know the Data Sheets would be marketed to "oilfield customers in the Oklahoma market." [Doc. No. 151, at 18]. NOV also points to Black Diamond's current registration to do business in Oklahoma.

The Court finds Plaintiff fails to satisfy the harmful effects test. NOV alleges Precision intentionally created deceptive data sheets that were used to pass off Defendant Black Diamond's EVRDRL product as part and parcel of a scheme to misappropriate its trade secrets. This satisfies the first requirement of the harmful effects test. To support the second and third requirements—action expressly aimed at the forum state and knowledge that the injury would be felt in the forum state, Oklahoma—NOV relies **solely** on the data sheets prepared by Precision for Black Diamond, which include Black Diamond's Oklahoma City office in the header. However, this ignores the location of Black Diamond's three other offices listed in the header of the data sheets: Houston, Texas; New Ibera, Louisiana; and Midland, Texas. [Doc. No. 152, at 12]. Thus, it does not follow that Precision's alleged conduct was expressly aimed at Oklahoma.

Throughout its response, NOV repeatedly points to Precision's knowledge that NOV's injury would be felt in Oklahoma because the data sheets were directed at Oklahoma consumers, which eventually lead to the death of an Oklahoma resident on an oil well site. [Doc. No. 151, at 19]. But "[m]ere injury to a forum resident . . . without more, cannot establish [Precision's] express aim towards the forum state." *Haarslev, Inc. v. Muir,* No. CV 23-2567-KHV, 2024 WL 1256080, at *5 (D. Kan. Mar. 25, 2024).

"The third prong" of the harmful effects test "'concentrates on the consequences of the defendant's action—where was the alleged harm actually felt by the plaintiff.'"

*Grynberg,* 490 F. App'x at 98 (quoting *Dudnikov,* 514 F.3d at 1075). NOV is a Delaware corporation with its principal place of business in Houston, Texas. In its response, NOV asserts for the first time that its alleged harm was felt in Oklahoma due to confusion among Oklahoma oilfield customers from the deceptively marketed EVRDRL connections by Black Diamond. But Oklahoma is not its home state. *Cf. Cont'l Res., Inc. v. Guderjahn Trucking, Inc.,* No. CIV-12-704-D, 2013 WL 593398, at *5 (W.D. Okla. Feb. 14, 2013) ("Although most of the conduct involved in the alleged scheme—preparing false or inflated invoices and destroying supporting documents—occurred in North Dakota, the fraud was aimed at Plaintiff's business in Oklahoma with knowledge that Plaintiff's injury—overpayment for services rendered or claimed—would be suffered in its home state."). And it does not have its principal place of business in Oklahoma either.

The Supreme Court in *Calder v. Jones,* 466 U.S. 783 (1984) cautioned that "mere foreseeability of causing an injury in the forum state is, standing alone, insufficient to warrant a state exercising its sovereignty over an out-of-state defendant." *Dudnikov,* 4514 F.3d at 1077. So, mere foreseeability that the brunt of NOV's injury would be felt in Oklahoma also does not suffice for establishing purposeful direction under the harmful effects test.

Also fundamentally fatal to NOV's argument is that NOV cannot rely solely on Black Diamond's contacts with the forum state to show that the Court has personal jurisdiction over Precision. "The inquiry [as to] whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore,* 571 U.S. 277, 238-84 (2014) (quoting *Keeton v. Hustler Mag., Inc.,* 466 U.S. 770, 775 (1984)). The "defendant's suit-related

conduct must create a substantial connection with the forum state," and "the relationship must arise out of contacts that the defendant *himself* creates with the forum State." *Id.* NOV relies only on Black Diamond's contacts with Oklahoma, and those contacts alone do not support the Court's exercise of personal jurisdiction over Precision.

**B. Conspiracy**

Alternatively, NOV argues the Court has personal jurisdiction over Precision as an alleged co-conspirator of Black Diamond, and the Basin Defendants.

"[A] co-conspirator's presence within the forum might reasonably create the 'minimum contacts' with the forum necessary to exercise jurisdiction over another co-conspirator if the conspiracy is directed towards the forum, or substantial steps in furtherance of the conspiracy are taken in the forum." *Melea, Ltd v. Jawer SA*, 511 F.3d 1060, 1070 (10th Cir. 2007). However, "for personal jurisdiction based on a conspiracy theory to exist, the plaintiff must offer more than bare allegations that a conspiracy existed, and must allege facts that would support a prima facie showing of a conspiracy." *Hart v. Salois*, 605 F. App'x 694, 700 (10th Cir. 2015). "[I]n addition to pleading a prima facie conspiracy, due process requires that a defendant also have minimum contacts with the forum." *Id.; see also Weldon v. Ramstad-Hvass,* 512 F. App'x 783, 789 (10th Cir. 2013) (unpublished) ("[A]llegations sufficient to support a prima facie showing of conspiracy do not *necessarily* establish jurisdiction over a nonresident co-conspirator.").

NOV raises a civil conspiracy claim against all Defendants. It alleges that Black Diamond and the Basin Defendants conspired to develop EVRDRL for the purpose of subsequently marketing EVRDRL as the "XT" or "XT type," which infringed upon the XT®

trademark. NOV alleges Precision acted in furtherance of the conspiracy by receiving NOV's confidential and proprietary trade secrets and helping Black Diamond "bootleg the XT® connection." [Doc. No. 152, at 8].

The Court finds that NOV's civil conspiracy claim cannot serve as the basis for exercising jurisdiction over Precision because NOV fails to plausibly allege that the conspiracy and its object were directed at Oklahoma, and that substantial steps in furtherance of the conspiracy were taken in Oklahoma. *See Melea,* 511 F.3d at 1070 ("Where no injury related to the conspiracy occurred in Colorado, and [the defendant's] only Colorado-related action with regard to any purported conspiracy was to receive communications from Colorado, the basis for jurisdiction is slim.").

NOV asserts that the object of the conspiracy was the design and development of EVRDRL, and to pass off EVRDRL connections as XT connections to deceive customers in the oil and gas industry and unjustly profit from the hard-earned goodwill of NOV. But this does not show that the conspiracy or its object was specifically directed at Oklahoma. NOV mainly relies on Precision's alleged preparation of the Data Sheets, which were sent to oilfield customers in Oklahoma, to support its assertion that the conspiracy was directed at Oklahoma. But, as noted above, the Data Sheets list Black Diamond's Oklahoma City office, along with two of its other offices.

The only physical Oklahoma connection to the conduct alleged is that Black Diamond at one time had a physical office in Oklahoma City that was included on headers for data sheets given to customers in the oil and gas industry. While this fact supports personal jurisdiction over Black Diamond, it does not necessarily follow that the Court has personal

jurisdiction over Precision. The Tenth Circuit has cautioned "'to hold that one co-conspirator's presence in the forum creates jurisdiction over other co-conspirators threatens to confuse the standards applicable to personal jurisdiction and those applicable to liability.'" *Hart,* 605 F. App'x at 700 (10th Cir. 2015) (quoting *Melea*, 511 F.3d at 1070).

For these reasons, the Court finds that NOV has not met its burden to make a prima facie showing of Precision's minimum contacts with Oklahoma.

**C. Traditional Notions of Fair Play and Substantial Justice**

As there are no factual allegations indicating that Precision "has purposefully directed [its] activities at residents of the forum" the Court is unable to conclude that it has specific jurisdiction over Precision. *Kuenzle v. HTM Sport-Und Friezeitgerate Ag*, 102 F.3d 453, 455 (10th Cir. 1996) (internal quotation omitted). Accordingly, the Court will not address the issue of whether the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. *See Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1299 n.1 (10th Cir. 1999) ("Because we conclude that [the plaintiff] has failed to establish that [the defendant] has minimum contacts with the [forum state], we need not proceed to the next step of the due process analysis—i.e., whether the exercise of personal jurisdiction over [the defendant] could offend 'traditional notions of fair play and substantial justice.'") (quoting *Asahi Metal Indus. Co. v. Superior Ct. of Cali.*, 480 U.S. 102, 113 (1987)).

**II. Dismissal or Transfer for Lack of Personal Jurisdiction**

When a federal district court determines that it lacks personal jurisdiction, it "shall, if it is in the interest of justice, transfer such action . . . to any other such court . . . in which

the action or appeal could have been brought." 28 U.S.C. § 1631.

Section 1631 "contain[s] the word 'shall,'" but the Tenth Circuit has "interpreted the phrase 'if it is in the interest of justice' to grant the district court discretion in making a decision to transfer an action or instead to dismiss the action without prejudice." *Trujillo v. Williams*, 465 F.3d 1210, 1222-23 (10th Cir. 2006). "Factors considered in deciding whether a transfer is in the interest of justice include [1] whether the claims would be time barred if filed anew in the proper forum, [2] whether the claims alleged are likely to have merit, and [3] whether the claims were filed in good faith or if, on the other hand, it was clear at the time of filing that the court lacked the requisite jurisdiction." *In re Cline*, 531 F.3d 1249, 1251 (10th Cir. 2008). "[W]here the court determines that it lacks jurisdiction and the interests of justice require transfer rather than dismissal, '[t]he correct course . . . [is] to transfer the action pursuant to [§ 1631].'" *Trujillo*, 465 F.3d at 1223 (alterations in original) (quoting *Ross v. Colo. Outward Bound Sch., Inc.*, 822 F.2d 1524, 1527 (10th Cir. 1987)).

Here, NOV asks the Court, to the extent it finds that it lacks personal jurisdiction over Precision, to weigh allowing the parties to consent to an alternative forum under 28 U.S.C. § 1404(a) or to submit additional briefing, addressing issues such as severance. It asserts that if the claims against Precision are severed, it will result in duplicative litigation in competing forums upon re-filing.

The Tenth Circuit has recognized that where there is a "patent impediment to [transfer under Section 1631]" such as multiple sets of defendants residing in different states, "there [is] no single court to which the action could be transferred with any assurance that

jurisdiction would [be] proper." *Shrader*, 633 F.3d at 1249. In *Shrader,* the Tenth Circuit further noted that it was "aware of no authority even permitting, much less requiring, a district court to unilaterally split up an action and transfer the resultant components to diverse jurisdictions under the auspices of § 1631." *Id*. at 1249-50. Accordingly, "'[d]istrict courts within the Tenth Circuit consistently have applied *Shrader* to find that dismissal, rather than transfer, is appropriate where the lawsuit 'features multiple defendants residing in different states, so there [is] no single court to which the action could be transferred with any assurance that jurisdiction would have been proper.'" *King v. United States,* No. 21-CV-01421-CMA-NYW, 2022 WL 889173, at *4 (D. Colo. Mar. 25, 2022) (quoting *Kennedy v. Mountainside Pizza, Inc.*, No. 19-CV-01199-CMA-STV, 2020 WL 4454897, at *7 (D. Colo. May 14, 2020) (collecting cases), *adopted,* 2020 WL 4448771 (D. Colo. Aug. 3, 2020)). Therefore, the Court finds that NOV's claims against Precision "should be dismissed without prejudice rather than 'unilaterally split[ting] up [the] action and transfer[ing] the resultant components to [multiple,] diverse jurisdictions.'" *Kennedy,* 2020 WL 4454897, at *8 (quoting *Shrader,* 633 F.3d at 1250).

**CONCLUSION**

For these reasons, Precision Engineering Solutions, LLC's Motion to Dismiss Third Amended Complaint and Brief in Support [Doc. No. 133] is **GRANTED**, and the claims against it are dismissed without prejudice.

**IT IS SO ORDERED** this 28th day of September, 2026.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE